**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 16 CR 793** |
| | ) | **Judge Wood** |
| | ) | |
| | ) | |
| **MICHAEL PERSAUD,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

<u>**DEFENDANT MICHAEL PERSAUD'S MOTION TO DISMISS INDICTMENT**</u>

Defendant, Michael Persaud, by and through his undersigned counsel, states as follows in support of his Motion to Dismiss the Indictment:

I.     <u>**INTRODUCTION**</u>

In the Indictment, the Government purports to set forth a "scheme to defraud" that allegedly underlies the ten counts of wire fraud with which Mr. Persaud has been charged. *See* December 8, 2016 Indictment, at Docket No. 2. Thus, the Indictment alleges that the purported "victims," identified only as "A through I," were businesses that, "for a fee, leased computer network infrastructure, equipment, and services, including computer servers, IP addresses, and bandwidth . . . and enabled their customers to use their networks remotely." *Id.* at p. 1. The Indictment further alleges that, when "opening an account" with those business, a customer such as Mr. Persaud was required to provide them with certain personal information, such as a "name, contact information, and billing information." *Id.* at p. 1. In addition, the Indictment alleges that

those businesses required customers such as Mr. Persaud to "agree to comply with their **acceptable use policies**, **terms of service agreements**, **or both**, which described the terms under which customers would be permitted to lease and use the victims' networks." *Id.* (emphasis added).

The Indictment charges that those "acceptable use policies" and "terms of service agreements" prohibited customers such as Mr. Persaud from using those businesses' networks to: 1) send "spam"[1] emails; and 2) send emails containing "falsified email header information." *Id.* at p. 2. However, with respect to that latter allegation, the Indictment charges that only "some" of the purported "victims" prohibited such activities. *Id.*

Accordingly, the Indictment charges that Mr. Persaud agreed to accept the businesses' "acceptable use policies" and "terms of service agreements," while knowing that he purportedly actually intended to violate them in the future by sending spam as well as "emails using domains registered in false names." *Id.* at pp.; 3-4. In Paragraphs 5 through 10 of the Indictment provide additional detail of alleged acts that Mr. Persaud purportedly engaged in to further the above scheme. *Id.* at pp. 4-6.

Finally, in Counts I through 10, the Indictment charges the alleged individual acts of wire fraud that Mr. Persaud allegedly engaged in pursuant to the above "scheme to defraud." *Id.* at pp. 4-6.

---

[1] In Paragraph e. (i-iii), the Indictment details why such "spam" is allegedly prohibited. See Indictment, at p. 2.

I. **ARGUMENT**

**Legal Standard**

Pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a defendant may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." *See* Fed.R.Crim.P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986). In considering a defendant's motion to dismiss the Indictment, the court is limited to the face of the Indictment and must accept the facts alleged in Indictment as true. *See, e.g., Winslow v. United States,* 216 F.2d 912, 913 (9th Cir. 1955). However, Rule 7(c)(1) of the Federal Rules of Criminal Procedure mandates that the Indictment contain the provision of law that the defendant is alleged to have violated, and "a plain, concise and definite written statement **of the essential facts** constituting the offense charged." Fed.R.Crim.P. 7(c)(1) (emphasis added); *see also Hamling v. United States*, 418 U.S. 87, 117-118 (1974) (stating that, although "[t]he indictment may incorporate the words of the statute to set forth the offense, . . . [it] must be accompanied with **such a statement of the facts and circumstances** as will inform the accused of the specific offense . . . with which he is charged." In other words, the facts alleged must "fairly inform" the defendant of the charge against which he must defend." *Id.*

The court is required to decide a motion to dismiss the Indictment prior to trial, unless good cause exists to defer ruling. Fed.R.Crim.P. 12(d); *Shortt*, *supra*, 785 F.2d at 1452. Moreover, the Government "cannot cure defects in an indictment by providing more particularized notice subsequent to the indictment." *United States v. Nosal*, 2009 WL 981336,

Case No. CR 08-00237 MHP (N.D. CA, April 13, 2009) (*citing Russell v. United States*, 369

U.S. 749, 770 (1962) ("a bill of particulars cannot save an invalid indictment")).

**The Facts Alleged Are Insufficient To Support A "Scheme To Defraud," And Are
Wholly Insufficient To Fairly Apprise Mr. Persaud**

As detailed above in the summary of the Indictment, the purported "scheme to defraud"

is premised entirely upon the allegations that Mr. Persaud did not intend to abide by the

businesses' acceptable use policies and/or terms of service agreements. In other words, the

Government contends that Mr. Persaud intended, at the time of alleged contracting, to breach his

alleged contracts with those businesses. This mere breach of contract, or intended breach of

contract, is insufficient to support a "scheme to defraud." *See McEvoy Travel Bureau, Inc. v.

Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir.1990) (stating that, a "breach of contract" does

not, in and of itself "constitute a scheme to defraud"). For that reason alone, the Indictment is

insufficient and must be dismissed.

Even if the Government's anticipatory breach of contract theory was somehow, the

Indictment nevertheless fails to withstand scrutiny because it is completely devoid of the

"essential facts" that allegedly provide the foundation of the crimes charges for a number of

reasons. *See* Fed.R.Crim.P. 7(c)(1), *supra*; *Hamling v. United States*, *supra*, 418 U.S. at 117-

118. As an initial matter, glaringly absent from the Indictment is any identification of the nine

alleged business "victims." This is highly significant, and thus certainly "essential," in light of

the fact that Mr. Persaud allegedly agreed to contract with each and every one of those

businesses. Moreover, even if the failure to identify any of those nine businesses could

somehow be viewed, in and of itself, as insufficient to support the dismissal of the Indictment,

that omission takes on additional weight in light of the complete absence of other clearly

"essential facts" regarding those businesses – and Mr. Persaud alleged contracts and contract formation with them.

Here, although the Indictment alleges that Mr. Persaud personally contracted with each and every one of the nine victim businesses, it fails to provide any semblance of a reasonable date upon which any of those contractual agreement were allegedly formed. Instead, the Indictment vaguely refers to a general, *three-year* time period, during which each and every one of those nine alleged contractual agreements were entered. It is impossible for Mr. Persaud to meaningfully to defend against those allegations where, as here, the Government has wholly failed to provide any of the dates upon which he entered into the contractual agreements, which in turn provide the entire foundation for the alleged "scheme to defraud" underlying each and every one of the 10 charged Counts of wire fraud. In short, he cannot mount a defense to his alleged affirmative acquiescence to any of the nine contractual agreements where the Indictment does absolutely nothing to provide any precision as the dates of contract formation.

Similarly, the essential fact of the *manner or means* of the parties' alleged contract formation in any of the nine separate instances is not set forth in any meaningful way. Therefore, the Indictment fails to allege *how* Mr. Persaud allegedly contracted with any of the nine businesses. For example, the Indictment fails to provide any facts to establish that Mr. Persaud signed a contract or other document in which he indicated that he had agreed to any of the nine businesses' acceptable use policies and/or terms of service agreements. If he allegedly did so, the Indictment also fails to identify *with whom* - on behalf of any of the alleged nine business victims - he executed such a contract. Therefore, Mr. Persaud and his counsel have no basis upon which to identify or contact those crucial witnesses, let alone call them as witnesses at trial.

Alternatively, the Indictment does not reveal whether the Government instead contends that Mr. Persaud entered into each, *or any*, of the allegedly contractually binding agreements with any of the nine business pursuant to a verbal agreement.  If that is what the Government contends, none of the "essential facts" identifying *with whom* he allegedly entered into any of those verbal contracts is alleged.  Thus, once again, Mr. Persaud and his counsel have no basis upon which to identify or contact those crucial witnesses, let alone call them as witnesses at trial.

The Indictment further fails to provide the required "essential facts" in light of its total failure to allege the *where* of Mr. Persaud's alleged contract formation with any of the purported nine business victims.  For example, the Indictment does not provide any facts regarding where Mr. Persaud was at the time of contract formation with any of the nine business.  Likewise, the Indictment does not provide any facts regarding the location of the alleged representatives of any of the nine businesses at the time of contract formation.

If all of that were not enough to establish that the Indictment is woefully lacking in the "essential facts," the Indictment cannot even take a position as to whether Mr. Persaud anticipatorily intended to violate a particular victim business' "acceptable use policy," versus its "terms of service agreement."  Moreover, incredibly, with respect to the charge in the Indictment that Mr. Persaud anticipatorily intended to breach either of those alleged documents by sending emails containing "falsified email header information" (*Id.* at p. 2), the Indictment simultaneously *admits* that only "some" of the purported victim businesses even prohibited that activity.  *Id.*  Yet, Mr. Persaud and his counsel are left to speculate and guess about which one of the nine victim businesses did not forbid such contract per their alleged contracts with Mr. Persaud.  That cannot be sufficient to provide Mr. Persaud with the "essential facts," let alone to allow him and his counsel to anticipate the Government's case or mount a defense.

## II.     CONCLUSION

Based upon all of the foregoing, Defendant, Michael Persaud, by and though his undersigned counsel, respectfully requests the entry of an Order dismissing the Indictment, dismissing this case, and for such other and further relief as is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED,**

**By:     s/Michael I. Leonard                    **
        **Counsel for Defendant**

## CERTIFICATE OF SERVICE

The undersigned states that, on March 19, 2018, he caused the above to be served on counsel of record by way of ECF filing.

**RESPECTFULLY SUBMITTED,**

**By:     s/Michael I. Leonard                    **
        **Counsel for Defendant**