UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PERSAUD | No. 16 CR 793<br><br>Judge Andrea R. Wood |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the follow response to defendant MICHAEL PERSAUD's Motion to Dismiss Indictment Dkt. 31.[1]

**I.    BACKGROUND**

On December 8, 2016, a grand jury returned an indictment against defendant MICHAEL PERSAUD, charging him with ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343. Dkt. 2. As detailed in the indictment, the nine victim companies were in the business of leasing computer network infrastructure, equipment, and services, such as computer servers, IP addresses, and bandwith. *Id.* at 1. In order to prevent damage to their networks and business reputation, the victim companies required their customers to comply with their acceptable use policies and/or terms of service agreements. *Id.* In the agreements for

---

[1] Citations to the docket are to "Dkt.," followed by the document number. Citations to defendant's brief (Dkt. 43) are to "D.Br." Each is followed by a page number.

each of the nine victim companies listed in the indictment, customers were prohibited from using the victim's network to send spam. *Id.* Among the reasons for this prohibition was that spam email could (1) delay the transmission of email and data for other customers and cause system outages; (2) cause the victim companies' to be blacklisted, disrupting their ability to serve other customers; (3) result in costs to the victim companies to respond to network outages, spam complaints, blacklistings, and other damage. *Id.* at 2. Some of the victim company agreements also prohibited customers from using the victim companies' networks to send emails containing falisifed header information. *Id.* at 3.

Defendant, using Impact Media, LLC, engaged in the business of sending spam email on behalf of sellers of various goods and services, for which he earned commissions. *Id.*

From in or about April 2012 through 2015, defendant engaged in a scheme to defraud the nine victim companies. *Id.* at 3. As part of the scheme, defendant lied in order to obtain access to and use of the victim companies' networks for the purpose of sending spam for profit and emails that used domains registered in false names. *Id.* As a result of his scheme, defendant fraudulently obtained access to at least nine victims' networks, sent well over one million spam emails to recipients in the United States and abroad, and caused damage to the victim companies and their networks. *Id.*

Defendant lied to the victim companies by agreeing that (1) he would not use their networks to send spam, and (2) he intended to comply with the victim companies' acceptable use policies and terms of service agreements. *Id.* In fact, as defendant knew at the time he falsely agreed to each victims' acceptable use policy and terms of service agreement, he intended to use, and cause to be used, the victims' networks to send spam and emails using domains registered in false names. *Id.* 3-4.

In order to conceal his identity, (1) defendant employed aliases, such as "Michael Pearson," "Michael Alexander Pearson, "Michael Prescott," and "Jeff Martinez" to fraudulently obtain access to the victims' networks, and to send spam over the victims' networks; and (2) registered multiple domains in false names in order to create false header information on emails sent over the victims' networks. *Id.* at 4-5. For example, after one victim terminated defendant's lease and denied him access to its network for spamming on or about May 24, 2012, defendant used the alias "Michael Pearson" to fraudulently obtain access to Victim A's network on or about March 8, 2013. *Id.* at 4. The indictment alleges five additional examples of defendant using his aliases in order to evade detection and fraudulently obtain access to the victim companies' networks. *Id.* at 4-5. Defendant used false forms of identification in the names of his aliases to support his lies to the victim companies. *Id.* at 5.

In order to avoid the victim companies' spam filters, defendant employed "snowshoe spamming" techniques, meaning he transmitted spam from victims'

3

networks using multiple IP addresses and domains. *Id.* at 5. When he was confronted by victim companies about spam complaints, defendant lied and claimed he only sent "solicited" spam, when he well knew that he was sending unsolicited spam . *Id.* at 6. Indeed, he had engaged in the unauthorized transfer and sale of millions of email addresses for the purpose of sending spam. *Id.*

The indictment details ten specific incidents in which defendant sent either email communications or financial transfers that were transmitted by means of wire communications in order to further his scheme to defraud the victim companies. *Id.* at 6-17. Since the indictment was returned, the government has produced voluminous discovery, consistent with its obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Defendant moves to dismiss the indictment as defective, pursuant to Rule 12(b)(3). Dkt. 43.

## II.     ARGUMENT

### A.     Legal Standard

The Federal Rules of Criminal Procedure provide that that a criminal defendant may, prior to trial, move to dismiss an indictment or information as defective. Fed. R. Crim. P. 12(b)(3). Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires simply that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Seventh Circuit has held that an indictment is constitutionally sufficient if it: (1) states all the elements of the offense charged; (2) informs the

4

defendant of the nature of the charge, enabling the defendant to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to later prosecution for the same offense. *See, e.g., United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997); *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995); *United States v. Watkins*, 709 F.2d 475, 478 (7th Cir. 1983). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013) (quoting *United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003)).

When considering a motion to dismiss, a court assumes all facts in the indictment are true and "must view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). To withstand a motion to dismiss, "an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." *United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987).

However, a motion to dismiss an indictment is not "a means of testing the strength or weakness of the government's case.'" *United States v. Moore,* 563 F.3d 583, 586 (7th Cir. 2009). Rather, when ruling on a motion to dismiss, the Court must determine "whether it's possible to view the conduct alleged" as constituting the crime charged. *Id.* Indictments are to be reviewed "on a practical basis and in their entirety,

rather than in a hypertechnical manner." *United States v. Cox,* 536 F.3d 723 (7th Cir. 2008).

### B. Analysis

Defendant moves to dismiss the indictment, arguing that the indictment is defective on both legal and factual grounds. First, defendant argues that the indictment alleges only a mere breach of contract, and is thus insufficient to support a scheme to defraud. D.Br. at 4. Second, defendant claims that the indictment is devoid of facts essential to his ability to mount a defense. D.Br. at 4-6. Defendant's arguments fail on the law and on the facts, as explained below.

#### 1. The indictment sufficiently alleges a scheme to defraud.

Defendant argues that the indictment alleges a simple breach of contract, and is therefore insufficient to support a scheme to defraud, as required to allege a violation of the wire fraud statute. D.Br. at 4. Contrary to defendant's argument, the indictment does not allege a "mere" breach of contract. Instead, it details a three-year scheme engaged in by defendant to defraud nine different victim companies in order for defendant to profit from his prolific spamming enterprise.

As an initial matter, the foundation for the fraud is established by defendant's agreement to comply with each victim's acceptable use policy and terms of service agreement, which prohibit customers from sending spam. Indeed, the indictment specifically alleges examples of why the victim companies prohibit customers from using their networks to send spam, including that:

6

      i.    spam could delay the transmission of email and data of the victims' other customers, and cause system outages;

      ii.    transmitting spam could cause the victims' IP addresses to be "blacklisted" – that is, block the delivery of emails sent from the victims' IP addresses – and thereby disrupt the victims' ability to provide service for their other clients; and

      iii.    to avoid the bearing the costs of responding to network outages, spam complaints, blacklistings, and other damages associated with spam.

Dkt. 2. at 2. It was defendant's methods of violating those agreements, and evading detection for his violations, that were part of his sophisticated scheme to defraud the victim companies. These false and fraudulent methods were clearly alleged in the indictment. Dkt. 2 at 3-10.

Defendant cites a civil case in which a complaint for violation of the civil RICO statute was dismissed for failure to sufficiently allege a scheme to defraud. D.Br. at 4 (citing *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Circuit 1990)). In *McEvoy*, the First Circuit held that "a scheme to defraud must be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy Travel*, 904 F.2d at 791 (emphasis included). The court distinguished the requirement that the scheme involve deceit from circumstances in which a business practice did not fulfill the expectations of a business contract, which could constitute a breach of contract, but would be insufficient to support allegations of a scheme to defraud. *Id.*

The concerns in *McEvoy* do not apply in this case because the indictment does not allege a simple breach of contract in which defendant failed only to meet the

7

expectations of a business contract. Instead, the indictment is replete with allegations of defendant's efforts to deceive the victim companies by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct, which are set forth in paragraphs 3-10. Dkt. 2 at 3-6. For these reasons, defendant's legal argument that the indictment is defective fails.

### 2. The indictment alleges facts sufficient to allege violations of the wire fraud statute.

Defendant also argues that the indictment is devoid of essential facts that provide the foundation for the charges. D.Br. at 4-6. Defendant specifically complains that the indictment does not include specifics concerning the acceptable use policy and terms of service agreement (*i.e.* the agreements) at issue, including the names of the victims; the dates, locations, and methods by which the victims and defendant entered into the agreements; which agreement defendant specifically violated as to each victim; and which victims prohibited the use of falsified email headers in its agreements. *Id.* The indictment more than sufficiently alleges facts to support the wire fraud charges alleged. Defendant's expectations for the specificity of allegations in an indictment are not supported by the law and are thus inviable arguments on a Rule 12(b)(3) motion to dismiss.

First, defendant complains that the indictment does not name the victims, and instead identifies the victims by letter (*e.g.*, Victim A). D.Br. at 4. As counsel for defendant well knows, protecting the identity of victims is standard practice in

8

publicly filed criminal indictments. Indeed, the Seventh Circuit has affirmed the sufficiency of indictments that do not identify specific fraud victims by name. *See e.g.*, *United States v. Barber*, 881 F.2d 345, 348-49 (7th Cir. 1989).[2] Defendant's first complaint is not an appropriate basis on which to dismiss an indictment.

Defendant next argues that he requires the date, method, location, and form of the agreements at issue in order to prepare a defense. D.Br. at 4-6. Again, this information was provided in the discovery. Nevertheless, the law simply does not require such specificity in the indictment. *Vaughn*, 722 F.3d at 925; *Gimbel*, 830 F.2d at 624. The government has met its constitutional burden and that required by Rule 7(c)(1) because the indictment in this case is lengthy and detailed and thus sufficiently specific to state all of the elements of the offense charged, inform defendant of the nature of the charges against him, and permit him to prepare for trial and avoid double jeopardy. *Agostino*, 132 F.3d at 1189.

To convict a defendant of wire fraud, the government must prove (1) that the defendant knowingly devised a scheme to defraud; (2) that the defendant did so with the intent to defraud; (3) the scheme to defraud involved a materially false of fraudulent pretense, representation, or promise; and (4) that for the purpose of carrying out the scheme or attempt to do so, the defendant caused interstate wire

---

[2] To the extent defendant was unable to identify the names of the victim companies from the discovery, he could have sought that information from the government. At no time has defendant made such a request. Nevertheless, the government will provide that information to defendant as a courtesy.

communications to take place in the manner charged in the particular count. Seventh Circuit Pattern Jury Instructions (2012), at p. 490 (18 U.S.C. § 1343). The indictment clearly alleges facts supporting each of these elements. The who, what, where, and when concerning the agreements are not necessary to state the elements of the offense, or to understand the *nature* of the charges alleged. Such a requirement would result in absurdly detailed and lengthy indictments. *See, e.g.*, *United States v. Burkhart*, No. 116 CR 212, 2017 WL 4650872, at *5 (S.D. Ind. Oct. 17, 2017) (holding that defendants' demand for the nature of the financial transaction and financial institution was a demand for "a level of detail that is not required to support the charges."); *United States v. Johnson*, No. 09 CR 20049, 2009 WL 3672075, at *2 (C.D. Ill. Oct. 28, 2009) (denying the motion to dismiss the indictment because the "[i]ndictment tracks the language of the statute and includes enough information to put Defendant on notice 'of the statute under which he is being charged and the specific way in which he allegedly violated the law.'" (quoting *United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007)).

Defendant's motion to dismiss the indictment is unfounded because the indictment returned by the grand jury sufficiently states the elements of the offense charged, fairly informs defendant of the nature of the charge, and enables defendant to avoid double jeopardy on this offense.

### III. CONCLUSION

For these reasons, the United States respectfully requests that this Court deny defendant's motion to dismiss the indictment.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Shoba Pillay*
SHOBA PILLAY
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 886-7631

Dated: April 8, 2018