UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PERSAUD | No. 16 CR 793<br><br>Judge Andrea R. Wood |

**MOTION TO REVOKE BOND**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves this Court to revoke the bond of defendant MICHAEL PERSAUD due to his multiple violations of his bond conditions (Docket No. 19), as follows:

1. The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343, for his offense conduct of engaging in a snowshoe spamming scheme in which he disseminated spam using several domains and IP addresses in order to avoid spam filters and dilute reputational metrics used to detect spam. Docket No. 1. Defendant lied to the networking hosting victims in order to gain access to their networks and then used those networks, in violation of their terms of service, as proxies for sending spam for his own profit. *Id.*

2. On or about February 7, 2017, the Court released defendant on a $4,500 O.R. bond, permitted defendant to continue residing in the District of Arizona, and instituted a number of conditions (Docket No. 19), including the following relevant conditions:

  a. Defendant must not violate federal, state, or local law while on release. Docket No. 19, Bond Condition 1.

  b. Defendant must participate in a computer monitoring program as directed by the Pretrial Services Office in the District of Arizona. Docket No. 19, Bond Condition 7(s)(3).

  c. Defendant must not possess any device, which allows access to the Internet. Docket No. 19, Bond Condition 7(s)(4).

  3. On or about March 8, 2017, during a status hearing, defendant stated that he was in the business of email marketing. The government expressed concern that using email required the use of the Internet, which meant defendant necessarily was using a device with access to the Internet and was thus in direct violation of Bond Condition 7(s)(4).

  4. Soon thereafter, on or about March 21, 2017, the Pretrial Services Office in this district issued a violation report outlining information provided by the supervising Pretrial Services Office in the District of Arizona. Docket No. 22. In that report, it states that defendant had not used his monitored computer since February 9, 2017, which was two days after he was released on bond. The officer interviewed defendant and reported as follows:

> Mr. Persaud was initially evasive about whether he had or had not used an unmonitored computer and advised that he had an assistant do computer work for him. [The Officer] asked further questions about if the defendant was directing someone else to use an unmonitored computer for him, and advised that was unacceptable if so. Mr. Persaud then noted that his computer is extremely slow with the monitoring software on it and therefore he cannot get

>any work done, so he has not used it. On March 17, 2017, the defendant admitted to [the Officer] to using a computer that is not monitored by the District of Arizona's computer monitoring program. Mr. Persaud reported that he used an unmonitored laptop in his home because the computer monitoring program made his monitored computer run very slowly.

*Id.* at 2. According to the report, the computer monitoring program is limited to web searches and websites a defendant frequents, and does not include email. *Id.*

5. On or about May 11, 2017, the government made an oral motion to modify the bond conditions, in light of defendant's admitted bond violations, to eliminate computer monitoring (as it was easily evaded by this defendant), and simply prohibit internet usage. Docket No. 28. The Court took the government's motion under advisement. *Id.* No further action was ultimately taken on the government's motion.

6. On or about July 5, 2018, Pretrial Services issued another violation report, in which it reported that the supervising officer in Arizona provided a computer monitoring report from May 14, 2018 through May 29, 2018, which included a screenshot of defendant's computer. The screenshot indicated that defendant had a Samsung Note 8 smartphone connected to his monitored computer. Docket No. 52. On or about August 2, 2018, the Court held a hearing concerning this violation report and ordered that defendant appear in person or by phone at the next status hearing, set for October 10, 2018. Docket No. 54.

7. On or about October 10, 2018, defendant appeared for the status hearing by phone, at which time the Court admonished defendant about his failure to comply

3

with the Court-ordered bond conditions in light of his use of the Samsung phone. The government also introduced evidence of potential additional violations committed by defendant, and submitted to the Court and counsel for defendant an FBI FD-1023 report of interview of a confidential source, and a series of screenshots taken by that source. The information contained in those documents is the subject of this motion.

8. According to a confidential source (the "CHS") working with the FBI, defendant used the CHS's software to engage in a spamming campaign involving a Canadian pharmacy.[1] The CHS currently operates a mass e-mail distribution software company, through which defendant attempted to send mass emails regarding pharmaceutical re-orders. According to the CHS, the CHS identified defendant's attempt to misuse the CHS's software due to the high ration of bounce-back emails, a common indicator for spam activity. As a result, the CHS terminated defendant's account.

9. The spammer identified by the CHS is clearly the defendant. As detailed in the screenshots accompanying the report, the account holder used defendant's name, Michael Persaud, with an address in Scottsdale, AZ. The account information

---

[1] According to the CHS's handling agent, the CHS began cooperating with the FBI in or around 2009, and has provided agents with background and intelligence information relevant to a range of investigations, which has been independently corroborated by law enforcement. As a result, the CHS has proven reliable and truthful. The CHS began cooperating with the FBI after learning that the CHS was under investigation. As a result of the CHS's cooperation, the CHS received a deferred prosecution agreement as to that investigation. The CHS later agreed to cooperate with the FBI in exchange for monetary compensation. To date, the CHS has been paid approximately $15,000. According to criminal history records checks, the CHS has no prior convictions.

reported by the CHS referenced the same Gmail address used by defendant in committing the charged offense. Finally, the CHS also reported that when he engaged in a Skype chat with the user, "Michael Persaud," that individual reported that he was currently facing wire fraud charges.

10. The screenshots provided by the CHS corroborate the information that he provided to the FBI. According to the first page of screenshots, as of August 5, 2018, defendant was using the domain "webstreetinfo.com" to engage in this latest spamming scheme. The second page of the screen shots indicates that the email account "orders@webstreetinfo.com" has accumulated 9001 subscribers to defendant's "Reorder" spam scheme. The third page is a screenshot of the first approximately 23 subscribers to the "Reorder" list. The fourth page is a screenshot of an example email to the "Reorder" list, which appears to be an advertisement for the users to reorder medication using "MyCanadianPharmacy." The last page is a screenshot showing email accounts that have barred the "Reorder" email, indicating that it was blocked as spam.

11. The CHS also reported that during their Skype conversation, defendant stated that defendant was also using Mailgun to send emails for a pharmacy reorder list, which is consistent with the above-referenced screen shots. According to open source research, Mailgun is an e-mail automation engine used by software developers for sending, receiving, and tracking emails. Mailgun, like the network provider victims of the charged offense conduct, requires that account-holders abide by their

5

terms of service. The Mailgun terms of service mirror the terms required by the provider victims and, among other things, prohibit violations of anti-spam laws and require that users comply with bulk email laws and regulations.[2]

12. As a result of the above, defendant is clearly violating the terms of his bond, namely, the conditions that he comply with computer monitoring, that he refrain from possessing devices with access to the Internet, and that he not violate any federal, state, or local laws. More specifically:

    a. Using Mailgun in violation of its terms of service is a violation of the CAN-SPAM Act and potentially the wire fraud statute, and is a violation of Bond Condition 1.

    b. Engaging in an email marketing campaign, regardless of whether it is criminal conduct, requires use of a computer. Because the computer monitoring program has not flagged this use, defendant is using an unmonitored computer, which is a violation of Bond Condition 7(s)(3).

    c. Using Mailgun and the CHS's email service require use of the Internet, and thus requires possession of a device with access to the Internet, and is a violation of Bond Condition 7(s)(4).

---

[2] The government will continue to investigate defendant's spamming activity in order to further corroborate the CHS's statements.

      d.    Using Skype requires use of the Internet, and thus requires possession of a device with access to the Internet, and is a violation of Bond Condition 7(s)(4).

13. Despite the significant latitude this Court has given defendant, including permitting him to be released on bond on his own recognizance, permitting him to live outside the district, permitting him to travel to other jurisdictions, and admonishing him for his prior bond violations, defendant appears to have continuously and consistently ignored this Court's order and violated several of his bond conditions by engaging in the very conduct for which he is charged.

WHEREFORE, the government respectfully moves this Court to revoke defendant's bond and remand him into federal custody pending trial.

                    Respectfully submitted,

                    JOHN R. LAUSCH, JR.
                    United States Attorney

By:   /s/ *Shoba Pillay*
       SHOBA PILLAY
       RICHARD M. ROTHBLATT
       Assistant U.S. Attorneys
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 353-5300

Dated: November 6, 2018