UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PERSAUD,<br>  also known as "Michael Pearson,"<br>  "Michael Prescott," and "Jeff Martinez" | No. 16 CR 793<br><br>Judge Andrea R. Wood |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO BAR,
IN PART, CERTAIN OPINIONS OF THE GOVERNMENT'S
"EXPERT" WITNESS, DR. JOHN LEVINE, OR FOR A *DAUBERT* HEARING**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant MICHAEL PERSAUD's Motion to Bar, in Part, Certain Opinions of the Government's "Expert" Witness, Dr. John Levine, or for a *Daubert* Hearing. Dkt. 90.[1] For the reasons set forth below, the United States respectfully requests that this Court deny defendant's Motion and find that a *Daubert* hearing is not warranted.

---

[1] Citations to the docket are to "Dkt.," followed by the document number. Citations to defendant's brief (Dkt. 90) are to "D.Br." Each is followed by a page number.

I.  **BACKGROUND**

A.  **Factual Background**

On December 8, 2016, a grand jury returned an indictment against defendant MICHAEL PERSAUD, charging him with ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343. Dkt. 2. As detailed in the indictment, the nine victim companies were in the business of leasing computer network infrastructure, equipment, and services, such as computer servers, IP addresses, and bandwith. In order to prevent damage to their networks and business reputation, the victim companies required their customers to comply with their acceptable use policies and/or terms of service agreements. In the agreements for each of the nine victim companies listed in the indictment, customers were prohibited from using the victim's network to send spam.

Among the reasons for this prohibition was that spam email could (1) delay the transmission of email and data for other customers and cause system outages; (2) cause the victim companies' to be blacklisted, disrupting their ability to serve other customers; (3) result in costs to the victim companies to respond to network outages, spam complaints, black-listings, and other damage. Some of the victim company agreements also prohibited customers from using the victim companies' networks to send emails containing falsified header information.

Defendant, using Impact Media, LLC, engaged in the business of sending spam email on behalf of sellers of various goods and services, for which he earned

commissions. From in or about April 2012 through 2015, defendant engaged in a scheme to defraud the nine victim companies. As part of the scheme, defendant lied in order to obtain access to and use of the victim companies' networks for the purpose of sending spam for profit and emails that used domains registered in false names. As a result of his scheme, defendant fraudulently obtained access to at least nine victims' networks, sent well over one million spam emails to recipients in the United States and abroad, and caused damage to the victim companies and their networks.

Defendant lied to the victim companies by agreeing that (1) he would not use their networks to send spam, and (2) he intended to comply with the victim companies' acceptable use policies and terms of service agreements. In fact, as defendant knew at the time he falsely agreed to each victims' acceptable use policy and terms of service agreement, he intended to use, and cause to be used, the victims' networks to send spam and emails using domains registered in false names.

In order to conceal his identity, (1) defendant employed aliases, such as "Michael Pearson," "Michael Alexander Pearson, "Michael Prescott," and "Jeff Martinez" to fraudulently obtain access to the victims' networks, and to send spam over the victims' networks; and (2) registered multiple domains in false names in order to create false header information on emails sent over the victims' networks. For example, after one victim terminated defendant's lease and denied him access to its network for spamming on or about May 24, 2012, defendant used the alias "Michael Pearson" to fraudulently obtain access to Victim A's network on or about

3

March 8, 2013. Defendant used false forms of identification in the names of his aliases to support his lies to the victim companies.

In order to avoid the victim companies' spam filters, defendant employed "snowshoe spamming" techniques, meaning he transmitted spam from victims' networks using multiple IP addresses and domains. When he was confronted by the victim companies about spam complaints, defendant lied and claimed he only sent "solicited" spam, when he knew that he was sending unsolicited spam. Indeed, he had engaged in the unauthorized transfer and sale of millions of email addresses for the purpose of sending spam. The indictment details ten specific incidents in which defendant sent either email communications or financial transfers that were transmitted by means of wire communications in order to further his scheme to defraud the victim companies.

### B. Expert Disclosure

On or about December 9, 2019, the government issued its expert disclosure to defendant in anticipation of trial, including the disclosure of Dr. John Levine. *See* Exhibit A. Attached to that disclosure, were Dr. Levine's *curriculum vitae*, and a list of 16 cases in which Dr. Levine has previously offered expert testimony in the last five years, including through a declaration report, or testimony at a deposition or trial. *Id.*

As detailed in the disclosure, the government anticipates Dr. Levine will provide instructive, and not case specific, expert testimony. *Id.* More specifically, and

in summary, the government anticipates that Dr. Levine will explain the following: (1) how the email system works, including email providers and their use of servers, internet protocol addresses ("IP Addresses"), and the Simple Mail Transport Protocol ("SMTP"); (2) how the unique area of email traffic, known as spam, operates, including defining spam, and how senders send large volumes of spam; (3) the purpose and operation of spam filters; (4) the use of blacklists for IP Addresses associated with spam; (5) the impact of a blacklisted IP Address on an email provider, including the potential for lost revenue; and (6) the email providers' use of terms of service and acceptable use policies to mandate their bar on spam to avoid the risk of blacklisted IP Addresses; and (7) the methods spammers typically use to defeat the spam filters and the email provider rules barring spam. *Id.*

Dr. Levine's expertise in this area is clearly conveyed in his *curriculum vitae*. *Id.* He is a computer science Ph.D., with over forty years of experience working in the field of computer science, including the internet and email. *Id.* He has held leadership roles and membership in a range of organizations within the field of the internet and email, including efforts to eliminate or minimize spam. *Id.* He has published over twenty books and papers, most of which involved the internet and email. *Id.*

Defendant moves to bar, in part, certain opinions of the government's expert witness, Dr. John Levine, or for a *Daubert* hearing. Dkt. 43.

## II. ARGUMENT

### A. Legal Standard

Federal Rule of Evidence 702, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), governs the admissibility of expert opinion testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). The party seeking to introduce the expert testimony bears the burden of showing that the expert meets the applicable standards. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). However, the rejection of expert testimony is the exception rather than the rule. *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) (*Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." ).

Pursuant to Rule 702 and *Daubert*, an expert qualified by "knowledge, skill, experience, training, or education" may provide opinion or other testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. 579.

As with any evidence, expert testimony must be relevant to be admissible. Fed. R. Evid. 402. In evaluating whether expert testimony is admissible, the court

6

must "consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case" and exclude expert testimony that does not. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Rule 403 calls for the exclusion of evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

B.   **Analysis**

Defendant moves to bar Dr. Levine's expert testimony. First, defendant argues that his anticipated testimony is irrelevant. D.Br. 6-7. Second, defendant argues that the government has failed to meet its burden to show that Dr. Levine is an expert, that his opinions are accepted within the relevant scientific community, that there is a foundation for these opinions. *Id*. A review of the allegations contained in the indictment and the material provided in the expert disclosure concerning Dr. Levine reveal that defendant's arguments are without merit.

1.   **Dr. Levine will not be offering opinion testimony.**

Dr. Levine will not be offering an opinion at trial, as suggested by defendant throughout his motion. D.Br. 5-7. Instead, as clearly set forth in the disclosure and explained above, the government anticipates Dr. Levine will provide expert testimony in the form of instruction. Dr. Levine has not had access to the evidence in this case, and will not offer any opinions concerning the allegations against defendant. Instead, in light of the unique and technical nature of the evidence in this case, the jury will

7

be assisted by instruction on the definition and operation of the relevant terms. *See* Fed. R. Evid. 702, Notes of Advisory Committee on Proposed Rules, ¶ 2 ("The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.").

More specifically, in order to understand the testimony and evidence the victim email provider witnesses will present, the jury will need to have an understanding of email providers, IP addresses, email, spam, and spam filters, including what they are and how they operate. The government anticipates that Dr. Levine's testimony will provide that necessary education of this technical arena, and will thus "assist the trier of fact with its analysis of any of the issues involved in the case." *See Ford Motor Co.*, 215 F.3d at 718; Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952) ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.").

### 2. Dr. Levine's testimony is relevant.

Dr. Levine's testimony is relevant. Defendant argues that "this is *not* a case about 'spam' or 'spammers,'" and thus his testimony is not relevant. D.Br. 6 (emphasis included). Contrary to defendant's assertion, this is indisputably a case about spam.

8

In fact, the word "spam" is used in the indictment no less than 24 times. Dkt. 2. As detailed above and in the indictment, defendant is alleged to have engaged in a scheme to defraud the victim email providers in order to execute spam campaigns. *Id.*

As a result, the government anticipates the victim email provider witnesses will testify, in part, about the email services they provided, the acceptable use and terms of service policies barring spam in place during the time of the alleged offense conduct, their use of spam filters, and the impact of spam on their business. Again, Dr. Levine's testimony will be valuable to the jury by providing them with the necessary foundation to understand the anticipated testimony and evidence presented by the victim witnesses. *See Ford Motor Co.*, 215 F.3d at 718; Ladd, Expert Testimony, 5 Vand.L.Rev. at 418.

Defendant argues that the use of the word "spam," is prejudicial. D. Br. 6. This is a case about spam, and the use of the term is unavoidable and will not be limited to the anticipated testimony of Dr. Levine. Further, relevant evidence is always prejudicial to a defendant. *United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007) ("all adverse evidence is prejudicial to the party against whom it is offered . . . only unfair prejudice is of significance in admissibility determinations."). However, defendant has not, and cannot, argue that the probative value of such evidence and testimony is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid.

9

403. For all of these reasons, Dr. Levine's anticipated testimony is relevant and proper in this case.

### 3. The government met its burden to show that Dr. Levine is an expert and his anticipated testimony is well-founded.

The government met its burden to show that Dr. Levine is an expert—in the relevant areas of the internet, email, and spam—and his anticipated testimony is well-founded. The extent of Dr. Levine's experience and expertise is set forth in his fulsome *curriculum vitae* and is detailed above. *See* Exhibit A.

Dr. Levine's professional history includes over forty years of experience working in the field of computer science, including the internet and email; and involvement in organizations within these fields. *Id.* He has published over twenty books and papers, most of which involved the internet and email. *Id.* In fact, his expertise in the internet, email, and spam is so well-accepted and respected that he is the author of multiple books in the well-known "Dummies," series, which "transforms the hard-to-understand into easy-to-use to enable learners at every level," including "The Internet for Dummies," and "Fighting Spam for Dummies."[2] *Id.* Finally, he has been qualified as an expert to provide expert testimony on 16 occasions in the last five years. *Id.*

---

[2] *See* https://www.dummies.com/ (last visited December 18, 2020).

The government has thus met its burden to show that Dr. Levine is an expert, that his opinions are accepted within the relevant specialized community, and that there is a foundation for his anticipated testimony.

### 4. A *Daubert* hearing is unwarranted.

The government's expert disclosure sufficiently establishes Dr. Levine's expertise and anticipated testimony. As detailed above, Dr. Levine's expertise in this field cannot be disputed. Indeed, the government has met its burden of showing (a) Dr. Levine's specialized knowledge will help the trier of fact to understand the evidence; and (b) Dr. Levine's anticipated testimony is based upon sufficient facts or data. Fed. R. Evid. 702; *Daubert*, 509 U.S. 579. Notably, the last two requirements of Rule 702, that "(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case," are not applicable here as Dr. Levine is not using any methodology to assess or analyze the facts or evidence in this case. As a result, a *Daubert* hearing to assess the reliability of his expertise and anticipated testimony is not necessary.

### III.  CONCLUSION

For these reasons, the United States respectfully requests that this Court deny defendant's motion to bar certain opinions of the government's expert witness, Dr. John Levine, and find that a *Daubert* hearing is not warranted.

                                    Respectfully submitted,

                                    JOHN R. LAUSCH, JR.
                                    United States Attorney

By:   /s/ *Shoba Pillay*
        SHOBA PILLAY
        Assistant U.S. Attorney
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604
        (312) 886-7631

Dated: December 18, 2020