IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16 CR 793 |
| | ) | Judge Wood |
| MICHAEL PERSAUD, | ) | |
| | ) | |

**DEFENDANT MICHAEL PERSAUD'S *REPLY* IN SUPPORT OF HIS MOTION TO BAR, IN PART, CERTAIN OPINIONS OF THE GOVERNMENT'S "EXPERT" WITNESS, DR. JOHN LEVINE, OR FOR A *DAUBERT* HEARING**

Defendant, Michael Persaud, by and through his undersigned counsel, submits this Reply in support of his Motion to bar the testimony of the Government's expert witness, Dr. John Levine, and for a *Daubert* hearing, and states as follows:

In its Response, the Government now finally admits that Dr. Levine: 1) essentially knows nothing at all about the specific facts of the present case, and 2) he will not offer any "opinions" at all in this case. Based upon those two entirely new and damning admissions, Mr. Persaud does not seek to merely bar the testimony of Dr. Levine, *in part* – Mr. Persaud seeks to bar the testimony of Dr. Levine in its entirety.

Despite those two admissions, the Government contends that it should still be allowed to call Dr. Levine as an "expert witness," *not* to offer any opinions at all, and *not* to apply the facts of this case to any applicable standards of any kind, but rather to provide some sort of

"instruction" or generalized tutorial to the jury. This Court should bar Dr. Levine's testimony in its entirety.

Indeed, here, the Government concedes that one or more fact witnesses from the "victim" companies, or otherwise, will be explaining and testifying about the exact same subject areas for which Dr. Levine is being proffered. The testimony of these non-expert witnesses makes some sense because they presumably will be talking about the particular facts of the present case and how the generalized concepts that Dr. Levine has been hired to talk about apply to those facts. However, in its Response, the Government fails to articulate any basis that would explain why these non-expert witnesses are not capable or qualified to explain, i.e., instruct or tutor, the jurors in the very same manner as Dr. Levine. Accordingly, by the Government's own admission, the testimony of Dr. Levine is cumulative of the testimony of its non-expert witnesses. Perhaps more importantly, at least the testimony of the non-expert witnesses will presumably be tethered to the facts of this case. Conversely, the testimony of Dr. Levine, as admitted by the Government in its Response, will be entirely untethered to the facts of this case. Therefore, not only is Dr. Levine's testimony cumulative of the testimony to be provided by the non-expert witnesses, it is entirely irrelevant to the facts and charges presented in this case.

The Government further argues in its Response that Dr. Levine is an "expert." He may be an expert in some things. However, in light of the fact that he knows nothing of the facts of the present case, and will not apply any of the facts of the present case to the subjects of his alleged expertise, his status as a generalized "expert" does not advance the position of the Government in any way.

Similarly, the fact that some Courts have found him to be an expert in some things does not establish that his testimony is needed or relevant in the present case – much less that it is *not* cumulative in the present case. The Government has failed to articulate how Dr. Levine's expert testimony in any of the other cases where he was purportedly qualified as an expert was similar to his role in this case. In other words, the Government has not identified any other Court that: allowed Dr. Levine to testify where he knew nothing of the facts in that case, and where he did not offer any opinions in that case, and where he did not tie the facts of that case to his generalized musings as an expert, and where he was instead allowed to offer untethered tutorials to the jury. It was the Government's burden to make such a showing that Dr. Levine's role and testimony in some other case bears some resemblance to his role and testimony in this case. The Government has made no such showing.

Finally, and perhaps *still* equally importantly, based upon the Government's Response, as well as its Disclosure of Dr. Levine, it is impossible to actually tell what Dr. Levine is going to testify about at trial. The Government instead continues to offer wholly generic and conclusory statements about what Dr. Levine will actually say at trial. That can all be avoided by either barring Dr. Levine, or alternatively promptly holding a *Daubert* hearing - including by Zoom or phone - to allow Mr. Persaud's counsel to *voir dire* Dr. Levine about what it is that he is going to say at trial. That type of examination seems exceedingly preferable to the objections at trial, further motion practice including for a mistrial, and, if necessary, appellate issues that will all certainly arise if Dr. Levine is allowed to get on the stand and provide his generalized musings, purportedly grounded in his status as a "expert" without very particularized disclosure of what it

is that he is going to offer and how it is particularly relevant to the facts and charges in this case.

Indeed, despite what the Government now claims in its Response, it is hard to see how Dr. Levine will *not* actually be offering "opinions" at trial based upon the Government's own Disclosure of Dr. Levine, including the following contained within the Government's Disclosure:

> The most common use of spam is to advertise commercial products and/or services, **while the second-most common use of spam is to further fraud schemes**. Spam is technically sent the same way as any other email, but that people who send spam ("spammers") commonly use computer programs that connect to email servers and send lots of emails very quickly. **Spammers typically** obtain recipient email addresses by buying lists of addresses, or guessing recipient addresses. **Spammers typically make money** in exchange for sending spam on behalf of others.
>
> **Spammers commonly attempt to defeat** spam filters in a variety of ways, including by arranging to route spam through different email servers or editing the spam's text.
>
> Dr. Levine may testify that **email providers typically have a r**ule, communicated to their users in **the providers' terms of service**, which prohibits using that email provider to send spam . . . That would **typically include** any legitimate emails sent by other users of that email provider, who will experience error messages when they attempt to send emails. This would **typically** cause **legitimate users** of that email provider to cancel their service with that provider—thereby causing the provider to lose revenue—and move to a different provider that does not operate a blacklisted email server. Accordingly, **email providers typically prohibit users** from using their email service to send spam because of the risk of lost revenues from their email servers being blacklisted. The consequences of violating this rule may ultimately include termination of that user's account with the email provider. **Spammers may attempt to defeat** the providers' no spam rules through various methods, including by altering the timing of when they send spam relative to when they sign up for service, and by signing up for service from new email providers under a fake identity.

*Id.* at Government's Disclosure, at pp. 2-3 (emphasis added).

If some or all of the above does *not* constitute "opinions," then one is hard-pressed to understand what is an opinion and what is not an opinion, and where the Government and Dr. Levine are drawing the line in this case. That will remain unknown without a *Daubert* hearing.

4

In sum, and particularly in light of the Government's own Disclosure of Dr. Levine, it is imperative that Mr. Persaud, his counsel, and this Court have the opportunity to hear directly from Dr. Levine, by way of a *Daubert* hearing, the full extent of the testimony he intends to offer at trial – including but not limited to the above-referenced "non-opinions" which clearly look like opinions.

**WHEREFORE**, Defendant, Michael Persaud, by and though his undersigned counsel, respectfully requests the entry of an Order barring the expert opinions of Dr. Levine, or for the setting of a *Daubert* hearing, and for such other and further relief as is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED,**

By: **s/Michael I. Leonard**
**One of the Attorneys for Defendant**

**CERTIFICATE OF SERVICE**

The undersigned states that, on December 23, 2020, he caused the above to be served on counsel of record by way of ECF filing.

**RESPECTFULLY SUBMITTED,**

By: **s/Michael I. Leonard**
**Counsel for Defendant**