IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 16 CR 793 |
| | ) | Judge Wood |
| MICHAEL PERSAUD, | ) | |
| | ) | |

**DEFENDANT MICHAEL PERSAUD'S MOTION TO DISMISS INDICTMENT**

Defendant, Michael Persaud, by and through his undersigned counsel, Michael I. Leonard of Leonard Trial Lawyers and Sami Azhari of Azhari LLC, respectfully moves this Court to dismiss the Indictment, and states as follows:

**I.   Introduction**

This Motion to Dismiss the Indictment is brought for purposes of addressing recent (2020) United States Supreme Court precedent - *Kelly v. United States*, 531 U.S. 12, 140 S.Ct. 1565, 1571. The Court's decision in *Kelly* clarifies and re-affirms that, in order for the Government to properly charge and bring claims of federal wire fraud, the Indictment must properly allege that the defendant's "scheme to defraud" was an attempt to deprive the purported victims of that fraud of their "property," and that the defendant must have actually deprived

1

those victims of that property.[1]

Here, the Government has charged Mr. Persaud with ten counts of wire fraud. *See* Indictment, at Dkt. No. 2. In sum, the Government alleges that Mr. Persaud engaged in a scheme to defraud certain companies, referred to as "Victims" in the Indictment, who operate computer networks. *Id.* According to the Government's theory of the case, Mr. Persaud signed or otherwise agreed to contractual type agreements with those Victims, which allowed him to utilize their networks or servers; but not to take them. *Id.* Those agreements allegedly prohibited Mr. Persaud from using the Victims' servers for purposes of sending out "spam" emails across those servers. The Government further alleges that, in breach of *those* agreements, Mr. Persaud nonetheless sent spam emails across the Victims' servers. *Id.*

The Government contends that Mr. Persaud's actions constitute wire fraud. *Id.*

Accordingly, the linchpin of the Government's wire fraud theory is that Mr. Persaud somehow deprived the Victims' of their property, i.e., their servers. *Id.* As set forth below, even if the Government could prove these allegations, Mr. Persaud's actions do not - as a matter of law - constitute wire fraud. This is particularly true in light of the Supreme Court's decision in *Kelly*.

II.     **The Allegations In The Indictment**

In the Indictment, the Government purports to set forth a "scheme to defraud" that allegedly underlies the ten counts of wire fraud with which Mr. Persaud has been charged. *See* Indictment, at Dkt. No. 2. Thus, the Indictment alleges that the purported "victims," identified

---

[1] Defendant previously moved to dismiss the Indictment, on completely different grounds, well prior to the Supreme Court's issuance of its Opinion in *Kelly*. *See* Dkt. at No. 43.

2

only as "A through I," were businesses that, "for a fee, leased computer network infrastructure, equipment, and services, including computer servers, IP addresses, and bandwidth . . . and enabled their customers to use their networks remotely." *Id.* at p. 1. The Indictment further alleges that, when "opening an account" with those business, a customer such as Mr. Persaud was required to provide them with certain personal information, such as a "name, contact information, and billing information." *Id.* at p. 1.

In addition, the Indictment alleges that those businesses required customers such as Mr. Persaud to "agree to comply with their acceptable use policies, terms of service agreements, or both, which described the terms under which customers would be permitted to lease and use the victims' networks." *Id.* (emphasis added). The Indictment charges that those "acceptable use policies" and "terms of service agreements" prohibited customers such as Mr. Persaud from using those businesses' networks to: 1) send "spam" 1 emails; and 2) send emails containing "falsified email header information." *Id.* at p. 2. Accordingly, the Indictment charges that Mr. Persaud agreed to accept the businesses' "acceptable use policies" and "terms of service agreements," while knowing that he purportedly actually intended to violate them in the future by sending spam as well as "emails using domains registered in false names." *Id.* at pp.; 3-4.

Paragraphs 5 through 10 of the Indictment provide additional detail of alleged acts that Mr. Persaud purportedly engaged in to further the purported scheme. *Id.* at pp. 4-6.

Finally, in Counts I through 10, the Indictment charges the alleged individual acts of wire fraud that Mr. Persaud allegedly engaged in pursuant to the above "scheme to defraud." *Id.* at pp. 4-6.

### III. Legal Standard

Pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a defendant may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." *See* Fed.R.Crim.P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986). In considering a defendant's motion to dismiss the Indictment, the court is limited to the face of the Indictment and must accept the facts alleged in Indictment as true. *See, e.g., Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1955). However, Rule 7(c)(1) of the Federal Rules of Criminal Procedure mandates that the Indictment contain the provision of law that the defendant is alleged to have violated, and "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1) (emphasis added); *see also Hamling v. United States*, 418 U.S. 87, 117-118 (1974) (stating that, although "[t]he indictment may incorporate the words of the statute to set forth the offense, . . . [it] must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense . . . with which he is charged." In other words, the facts alleged must "fairly inform" the defendant of the charge against which he must defend." *Id.* The court is required to decide a motion to dismiss the Indictment prior to trial, unless good cause exists to defer ruling. Fed.R.Crim.P. 12(d); *Shortt, supra*, 785 F.2d at 1452.

### IV. Argument

As the Supreme Court recently noted, "[T]he federal wire fraud statute makes it a crime to effect (with use of the wires) 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Kelly v. United States*, 531 U.S. 12, 140 S.Ct. 1565, 1571 (2020) (*quoting* 18 U.S.C. § 1343). Thus, the

4

*Kelly* court further found that the federal "wire fraud statute thus prohibits only deceptive 'schemes to deprive [the victim of] money or property.'" *Id.* (*quoting McNally v. United States*, 483 U.S. 350, 358 (1987)). More significantly, the *Kelly* court held that, in order to properly allege a wire fraud count, the Government has to "show not only that" the defendant "engaged in deception, but that an '**object of the[ir] fraud [was] property**.'" *Id.* (*quoting Cleveland v. United States*, 531 U.S. 12, 26 (2000)) (emphasis added). The *Kelly* court made clear that the "fraud statutes . . . were 'limited in scope to the protection of **property rights**.'" *Id.* (*quoting McNally*, *supra*, at 360) (emphasis added).

The *Kelly* court applied those standards in overturning the federal wire fraud convictions of certain political officials/advisors who masterminded and carried out the New Jersey "Bridgegate scandal," pursuant to which multiple access lanes or entryways to the George Washington bridge leading into Manhattan were intentionally shut down as "payback" to the Mayor of Fort Lee, New Jersey who refused to support then Governor Christie's re-election. *Id.* at *Kelly*, 140 S.Ct. at 1568. The defendants were allegedly attempting to create "gridlock" by limiting the citizens of Fort Lee's access to the "world's busiest bridge over a four-day period, to punish that city's mayor." *Id.* Those access lanes were owned/controlled by the Port Authority of New York and New Jersey. *Id.* The Government's allegations in the Indictment at issue in *Kelly* were premised upon the fact that the defendants engaged in a scheme to shut down that bridge by "reallocating the lanes," and carried that scheme out by means of false and fraudulent wire transmissions. *Id.*

In holding that the Government's allegations in the Indictment did *not* properly constitute wire fraud, the *Kelly* court found that the defendants' "deceit must also have had the 'object' of obtaining the Port Authority's money or property.'" *Id*. at 1572. The Government in *Kelly* argued

5

that the defendants' scheme in fact had as its object the Port Authority's "property" for purposes of the wire fraud statute because the defendants, by their actions, had "sought to commandeer part of the Bridge itself—to take control of its physical lanes, and thus that defendants' scheme targeted a species of valuable right [or] interest that constitutes property under the fraud statutes." *Id.* (citations omitted).

However, the *Kelly* court rejected the Government's arguments. The *Kelly* court held that "the Government could not have proved" that the defendants' "scheme was directed at the Port Authority's property." *Id.* at 1572. The court found that the defendants' "plan never had that as an object." *Id.* Moreover, the defendants did not "walk away with the lanes; nor did they take the lanes from the Government." *Id.* at 1573. Accordingly, the court in *Kelly* overturned the defendants' convictions because there was no legal basis upon which wire fraud counts could be premised. *Id.*

The *Kelly* court's logic and reasoning is directly analogous and applicable to the conduct alleged in the Indictment in the present case. Here, even reading the Indictment - as this Court must - by giving every inference to the Government and accepting as true those allegations, there is no legal basis for the assertion by the Government of wire fraud in the Indictment. Here, clearly, according to the Government's own allegations, Mr. Persaud allegedly sought to dupe the Victims *not* so he could take and deprive them of their property; but instead so that he could gain access to that property and use it to carry out the actual alleged "object" of his purported scheme, i.e., to send out spam email by way of using the Victims' servers. In other words, like the defendants in *Kelly*, at best, Mr. Persaud sought to periodically "commandeer" their servers/networks so as to send spam across them.

Thus, even according to the Government's own allegations, Mr. Persaud never took the

6

Victims' property, nor did he intend to take it. Indeed, much like the defendants in *Kelly*, who did *not* intend to and did *not* in fact take the access lanes to the bridge, here too Mr. Persaud undeniably did **not** similarly "walk away" with the alleged Victims' servers or networks – nor did he ever intend to do so.

      A scheme to get money or property is not enough if getting money or property is not the object of the scheme. In this case it is not alleged, nor are there any facts to support, that Mr. Persaud intended to take the servers, nor did he intend to take any money from the "victims," Rather, he was paid independently by companies for whom he was paid to conduct the internet marketing.

      In section 1e of the Indictment, the Government references some issues that *could* occur as a result of customers transmitting marketing email from their servers. They are essentially arguing that this amounts to a deprivation of the server companies from having the right to control their own property. In other words, they should have the right to control who is on their servers and what the terms should be, and that customers who violate those terms subject the companies to draconian penalties.

      There is no question that is an issue regarding intangible property, but this is different. What the Government is talking about is an intangible *right*, and the case of *Kelly* reaffirms the concept of going back to traditionally recognized property rights. While traditionally recognized property rights may include intangible property, it does not mean that intangible *rights* are property. The right to control theory is an intangible right, and *not* property subject to the wire fraud statute. It falls squarely under the honest services theory instead.

Even with the Government's argument that Mr. Persaud either contemplated or should have known that he could cause financial harm to the "Victims," *Kelly* still holds that causing economic harm is not the same as scheming to convert the victim's property.

For those reasons, there simply is no legal basis upon which the Government can prove that Mr. Persaud committed wire fraud. The Indictment thus does not properly allege any claims for wire fraud. Therefore, this Court should dismiss the Indictment, in its entirety and with prejudice.

**WHEREFORE**, Defendant, Michael Persaud, by and though his undersigned counsel, respectfully requests the entry of an Order dismissing the Indictment, and for such other and further relief as is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED,**

By: s/Michael I. Leonard
**One of the Attorneys for Defendant**

**LEONARD TRIAL LAWYERS, LLC**
Michael I. Leonard
120 North LaSalle St., Suite 2000
Chicago, Illinois 60602
(312)380-6659 (phone)
(312)264-0671 (fax)
mleonard@leonardtriallawyers.com

**AZHARI LLC**
Sami Azhari
30 N. LaSalle Street
Suite 2140
Chicago, Illinois 60602
(312)6262-2871 (phone)
(312)626-2872 (fax)
sazhari@azharillc.com

## CERTIFICATE OF SERVICE

The undersigned states that, on February 23, 2021, he caused the above to be served on counsel of record by way of ECF filing.

**RESPECTFULLY SUBMITTED,**

**By:** **s/Michael I. Leonard**
**Counsel for Defendant**