UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL PERSAUD,<br>  also known as "Michael Pearson,"<br>  "Michael Prescott," and "Jeff Martinez" | No. 16 CR 793<br><br>Judge Andrea R. Wood |

**GOVERNMENT'S MOTIONS *IN LIMINE***

The UNITED STATES OF AMERICA by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits these motions *in limine* requesting that the Court (a) make a determination, *in limine*, pursuant to Federal Rule of Evidence 104 that business records that the government intends to introduce at trial are admissible pursuant to Federal Rules of Evidence 803(6), 902(11), and 902(13); (b) bar evidence and argument designed to elicit jury nullification; (c) to preclude arguments regarding discovery; and (d) admit summary chart evidence of voluminous records under Federal Rule of Evidence 1006.

**I.   BACKGROUND**

On December 8, 2016, a grand jury returned an indictment against defendant MICHAEL PERSAUD, charging him with ten counts of wire fraud, in violation of Title 18, United States Code, Section 1343. Dkt. 2. As detailed in the indictment, the nine victim companies were in the business of leasing computer network infrastructure, equipment, and services, such as computer servers, IP addresses, and bandwith. In order to prevent damage to their networks and business reputation, the victim companies required their customers to comply with their acceptable use

policies and/or terms of service agreements. In the agreements for each of the nine victim companies listed in the indictment, customers were prohibited from using the victim's network to send spam.

Among the reasons for this prohibition was that spam email could (1) delay the transmission of email and data for other customers and cause system outages; (2) cause the victim companies' to be blacklisted, disrupting their ability to serve other customers; (3) result in costs to the victim companies to respond to network outages, spam complaints, black-listings, and other damage. Some of the victim company agreements also prohibited customers from using the victim companies' networks to send emails containing falsified header information.

Defendant, using Impact Media, LLC, engaged in the business of sending spam email on behalf of sellers of various goods and services, for which he earned commissions. From in or about April 2012 through 2015, defendant engaged in a scheme to defraud the nine victim companies. As part of the scheme, defendant lied in order to obtain access to and use of the victim companies' networks for the purpose of sending spam for profit and emails that used domains registered in false names. As a result of his scheme, defendant fraudulently obtained access to at least nine victims' networks, sent well over one million spam emails to recipients in the United States and abroad, and caused damage to the victim companies and their networks.

Defendant lied to the victim companies by agreeing that (1) he would not use their networks to send spam, and (2) he intended to comply with the victim

2

companies' acceptable use policies and terms of service agreements. In fact, as defendant knew at the time he falsely agreed to each victims' acceptable use policy and terms of service agreement, he intended to use, and cause to be used, the victims' networks to send spam and emails using domains registered in false names.

In order to conceal his identity, (1) defendant employed aliases, such as "Michael Pearson," "Michael Alexander Pearson, "Michael Prescott," and "Jeff Martinez" to fraudulently obtain access to the victims' networks, and to send spam over the victims' networks; and (2) registered multiple domains in false names in order to create false header information on emails sent over the victims' networks. For example, after one victim terminated defendant's lease and denied him access to its network for spamming on or about May 24, 2012, defendant used the alias "Michael Pearson" to fraudulently obtain access to Victim A's network on or about March 8, 2013. Defendant used false forms of identification in the names of his aliases to support his lies to the victim companies.

In order to avoid the victim companies' spam filters, defendant employed "snowshoe spamming" techniques, meaning he transmitted spam from victims' networks using multiple IP addresses and domains. When he was confronted by the victim companies about spam complaints, defendant lied and claimed he only sent "solicited" spam, when he knew that he was sending unsolicited spam. Indeed, he had engaged in the unauthorized transfer and sale of millions of email addresses for the purpose of sending spam. The indictment details ten specific incidents in which

3

defendant sent either email communications or financial transfers that were transmitted by means of wire communications in order to further his scheme to defraud the victim companies.

## II. GOVERNMENT'S MOTIONS *IN LIMINE*

### A. The Business Records that the Government Intends to Offer Are Admissible Pursuant to Federal Rules of Evidence 803(6), 902(11), and 902(13).

At trial, the government intends to introduce a number of business records through certifications, pursuant to Federal Rule of Evidence 902(11) and 902(13). The records at issue are business records of email companies, namely, Google and Apple, and financial institutions, including JP Morgan Chase Bank, Citibank, and PayPal.

Attached hereto as Exhibit A are true and correct copies of certifications relating to the following business records as summarized in the chart below:[1]

| Exhibit | Record Descriptions |
|---|---|
| Google Search Warrant Records | Subscriber information, IP records, and emails for email address: michaelp77x@gmail.com |
| Google Subscriber Records | Google subscriber information and IP records for email addresses: adroisales@gmail.com, anastenaka35@gmail.com, domainservice45@gmail.com, domainservice55@gmail.com, domainservice56@gmail.com, domainservice58@gmail.com, headloadprimers@gmail.com, mikeprescott4@gmail.com, mikeprescott5555@gmail.com, mikeprescott6666@gmail.com, |

---

[1] The PayPal, AOL, and NameCheap certifications will be provided at a later date.

4

|  | mikeprescott7777@gmail.com, myinsideoffers@gmail.com powermediallc12@gmail.com, sdjeffbaker@gmail.com, sextryschnozz@gmail.com, sextryschnozz2@gmail.com, tporrata76@gmail.com |
|---|---|
| Apple Search Warrant Records | Subscriber information, IP records, and emails for the Apple iCloud account associated with email addresses: michaelp77x@gmail.com and michaelp77x@icloud.com |
| AOL Search Warrant Records | Subscriber information, IP records, and emails for the email address: michaelp77@aol.com |
| NameCheap Records | Domain subscriber and IP records for account ID michaelp77 |
| JP Morgan Chase Bank Records | Bank records for Michael Persaud, account numbers ending 0357 and 3195, and debit card records for account number ending 4569 |
| Citibank Records | Credit card records for Michael Persaud, account numbers ending 2845 and 4724 |
| PayPal Records | Paypal records for Michael Persaud, account numbers ending 8885, 9939, 9177, 2719, and 2177 |

The business records that the government intends to introduce at trial are admissible as noted hearsay exceptions, pursuant to Federal Rules of Evidence 803(6), 902(11), and 902(13) and therefore do not require live witness testimony from records custodians. The government hereby moves the Court to find, pursuant to Federal Rule of Evidence 104, that the records at issue are authentic business records within the meaning of Federal Rule of Evidence 803(6).

Federal Rule of Evidence 104 authorizes the Court to determine in advance of trial "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence." This rule applies to all preliminary determinations, including the question of whether documents fall within

5

the "business records exception" to the hearsay rule. *See United States v. Kasvin*, 757 F.2d 887, 893 (7th Cir. 1985) (affirming trial court's preliminary determination pursuant to Rule 104 that business records were admissible pursuant to Rule 803(6)).

The records that the government intends to offer at trial fall within the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Rule 803(6) provides that such records are admissible, notwithstanding the hearsay rule, provided:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, *or by a certification that complies with Rule 902(11)* or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) (emphasis added). In other words, the authenticity of business records may be established either through live testimony of a custodian of records, or by a certification that complies with Rule 902(11). Rule 902(11) provides that:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11). The rules were extended to cover records generated by an electronic process or system under Rule 902(13), which provides that:

> A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(13).

The Seventh Circuit has recognized the efficiency of the introduction of business records through 902(11) certifications, *see United States v. Green*, 648 F.3d 569, 580 (7th Cir. 2011), and affirmed the use of 902(11) certifications when the foundational requirements of Rule 803(6) are met, *see, e.g., United States v. Klinzing*, 315 F.3d 803, 809-10 (7th Cir. 2003) (affirming trial court's admission of some documents, specifically defendant's W-2 wage statements, through 902(11) certifications and denying defendant's argument that Rule 803(6) violated his Sixth Amendment right to confront witnesses).

Here, as authorized by Rule 803(6), the government has established the authenticity of the business records that it intends to introduce, as well as their admissibility under Rule 803(6), through certifications obtained from the custodians of records that comply with Rule 902(11) and Rule 902(13). The attached certifications attest to the foundational requirements set forth by these rules. Moreover, through this pretrial motion, the government complies with the requirements of Rule 902(11) and 902(13) of advance notice to the defense of its intent to introduce these documents pursuant to Rules 902(11) and 902(13), and provides

7

an opportunity for inspection of the records and declarations. Indeed, the government has tendered all of the records in its possession that it intends to introduce pursuant to Rule 902(11) and Rule 902(13).

Admission of these documents through 902(11) or 902(13) certification will save the parties, the Court, and the jury members significant time and resources, as the certifications will obviate the need for live witness testimony from at least three different custodians of records. It will also save considerable time and resources for the witnesses. These witnesses must travel to Chicago from out-of-state, and their testimony would be limited solely to stating that these documents are inherently reliable as records of regularly conducted activity—a fact that each of them has already certified to be true under penalty of perjury

### B. Exclude Evidence or Argument Designed to Elicit Jury Nullification

The government respectfully moves the Court to preclude defendant from arguing jury nullification or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification. The law is clear that it is improper for a defendant to suggest in any way that the jury should acquit even if it finds that the government has met its burden of proof. *See United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively

sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."); 7th Cir. Pattern Crim. Jury Instruction 1.01 (2012) ("You must follow all of my instructions about the law, even if you disagree with them.").

Although the government is unable to anticipate each form of jury-nullification argument or evidence that defendant may seek to interject into this trial, the government notes the following examples.

### 1. Potential Penalties

The government respectfully moves the Court to preclude defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties he faces if convicted. The Seventh Circuit has observed that "arguing punishment to a jury is taboo." *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (vacated on other grounds). Such argument or evidence is improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function

is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged.... Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.").

### 2. "Outrageous Government Conduct"

Defendant should be precluded from arguing outrageous government conduct. The impropriety of making such an argument is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous-government-conduct defense, holding that it affords no defense to a criminal prosecution as a matter of law. *See United States v. Sherman*, 268 F.3d 539, 550 (7th Cir. 2001); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to it. Second, even before the *Boyd* decision, the Seventh Circuit had held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit that has considered the issue has held that the issue is not a jury question) (citations omitted); *see also United States v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009). As such, defendant should be barred from making such an argument at trial.

### 3. The Motivation for Investigating or Prosecuting this Case

Evidence bearing on the government's decision to investigate or prosecute this case is irrelevant and thus should be excluded from trial. *See United States v.*

10

*Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). Inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to the factual guilt or innocence of a defendant. *See United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting that, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *3 (N.D. Ill. Mar. 2, 2011) ("Argument or evidence relating to the Government's motivation are not relevant to the jury's determination of a defendant's guilt or innocence.").

### C. Motion to Preclude Comments About Discovery

The Court should preclude defendant from requesting discovery from witnesses or the government, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the false impression that the government has suppressed information as a means of seeking an unfair advantage. These requests can easily be made to the Court or the government outside the presence of the jury with no prejudice resulting to either side. This system has been used in other cases and has worked well. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D.Pa. 1996); *United States v. Gray*, 2010 WL 1258169, *2-3 (N.D. In. March 26, 2010).

11

### D. Motion to Admit Summary Chart Evidence of Voluminous Records under Federal Rule of Evidence 1006

The United States anticipates seeking to admit at trial summary chart exhibits, summarizing voluminous email records, domain, and financial records, in order corroborate witness testimony and provide relevant evidence regarding the defendant's use of multiple domains and email providers in order to evade spam filters and otherwise engaged in the offense conduct. The underlying email, domain, and financial records have been produced in discovery.

Federal Rule of Evidence 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. Given the voluminous email records, which have been provided to defendant, Rule 1006 allows the admission of the proposed summary exhibits. Courts have articulated a three-part test to determine when a chart, summary or calculation is admissible. First, the writings, records or photographs at issue must be voluminous. *See United States v. Briscoe*, 896 F.2d 1476, 1495 (7th Cir. 1990) (affirming district court's admission of "cover sheets" as summaries for transcripts of 238 tap recorded telephone conversations pursuant to Rule 1006). Second, the party offering the chart, summary, or calculation must lay a proper foundation for its admission. *Id.; United States v. Driver*, 798 F.2d 248, 252 53 (7th Cir. 1986). Third, the original documents or duplicates must be made available to the opposing party

12

prior to trial. *Coates v. Johnson & Johnson*, 756 F.2d 524 (7th Cir. 1985). The decision to admit or exclude Rule 1006 summaries rests within the sound discretion of the district court. *Briscoe*, 896 F.2d at 1495.

Here, the government has satisfied all the conditions for admitting Rule 1006 summaries. The evidence in question is indisputably voluminous: thousands of pages of email, domain, and financial records. The government hereby acknowledges its obligation to provide a proper foundation for the admission at trial. In addition, the government anticipates calling an FBI agent who will testify to the accuracy of the summary charts. Finally, copies of the underlying documents have been produced to the defendant. Accordingly, the Court should conditionally admit the summary charts without having to individually introduce and authenticate the voluminous underlying records, which will save this Court time and conserve judicial resources by expediting the trial. *Cf. Briscoe*, 896 F.2d at 1495 (Rule 1006 does not require that it be "literally impossible to examine all the underlying records, but only that in court examination would be an inconvenience.") (citation omitted).

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that these motions *in limine* be granted.

Dated: March 5, 2021

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    s/ *Shoba Pillay*
SHOBA PILLAY
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

14